**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **ANSELL HEALTHCARE PRODUCTS LLC, *et al.*,** | ) ) ) | |
| **Counterclaimants,** | ) ) | |
| **v.** | ) ) | **Civil Action No. 08-585 (RMC)** |
| **TILLOTSON CORPORATION,** | ) ) | |
| **Counterclaim Defendant.** | ) ) ) | |

**MEMORANDUM OPINION**

The parties to this litigation are caught up in a massive struggle over the legitimacy of a patent covering an "elastomeric material" that is peculiarly suited to making surgical gloves that conform to the shape of a surgeon's hands but do not exert pressure that might numb the hands. Litigation is being pursued in federal courts in Georgia, Delaware, and the District of Columbia, as well as before the International Trade Commission ("ITC"). In this Court, Ansell Healthcare Products LLC and Ansell Protective Products, Inc. (collectively, "Ansell" or "Ansell Counterclaimants"), importers and sellers of surgical gloves, allege that a patent to the elastrometric material owned by Tillotson Corporation ("Tillotson") was obtained by fraudulent and inequitable conduct and is, therefore, invalid. Ansell has sought a declaratory judgment in Delaware that its gloves do not infringe on Tillotson's patent. Inasmuch as these parties are already joined in litigation concerning the legitimacy of the Tillotson patent, it is neither efficient nor economical to conduct a separate suit over the same issues in the District of Columbia. This case will be transferred to the United States District Court for the District of Delaware.

## I. BACKGROUND

Tillotson was the owner of United States Patent No. 5,014,362 (the "'362 Patent")
which was surrendered during reissue proceedings that led to U.S. Patent No. Re. 35,616 (the
"Reissue '616 Patent"), also owned by Tillotson. The Reissue '616 Patent, filed on November 13,
1995 and published on September 30, 1997, is titled "Elastomeric Covering Material and Hand
Glove Made Therewith." *See* Tillotson's Mot. to Dismiss for Improper Venue or in the Alternative
to Transfer ("Tillotson Mem.") [Dkt. ## 6 & 8] at 1. According to the Amended Counterclaim
Complaint ("Am. Compl.") [Dkt. # 5], Tillotson "has had a pattern of filing district court lawsuits
in Georgia alleging infringement of the Reissue '616 Patent that are not designed to obtain an
adjudication on the merits," but are used "to coerce the named defendants into agreeing to take
licenses" to the Reissue '616 Patent to avoid the cost of litigation. *See* Am. Compl. ¶ 10. Tillotson
has "directly asserted counterclaims of infringement of the Reissue '616 Patent in declaratory
judgment actions initiated by Ansell counterclaimants in the United States District Court for the
District of Delaware." *Id*. ¶ 11. Tillotson also alleges patent infringement by Ansell
Counterclaimants in a pending action before the ITC, alleging infringement of the Reissue '616
Patent on the part of the Ansell Counterclaimants, their parent corporation, Ansell Ltd., their sister
corporation, Ansell (Thailand) Ltd., their suppliers, and at least one customer. *Id*. ¶ 12.

Ansell alleges that Tillotson knows that the Reissue '616 Patent is invalid because
its "claims were . . . impermissibly broader in scope" than those of the '362 Patent and the Reissue
'616 Patent was "based on a defective reissue declaration"; in addition, the Reissue '616 Patent is
"unenforceable by reason of Tillotson's fraudulent and inequitable conduct." *Id*. ¶ 13. The alleged
fraudulent and inequitable conduct constituted a "knowingly false" and "highly material"

misrepresentation to the United States Patent and Trademark Office (the "PTO") that Tillotson had been unaware of certain prior art when the '362 Patent was obtained.  *Id*. ¶¶ 14(d) & (e).  Had Tillotson revealed the prior art at the time it was prosecuting the '362 Patent, the PTO allegedly would not have allowed the patent in the form it was issued.  *Id*. ¶ 14(j).  Ansell further alleges that the PTO would not have allowed claim 23 of the Reissue '616 Patent had it known that Tillotson intentionally and knowingly relied upon unreliable test data.  *Id*. ¶ 14(o).  Tillotson's alleged conduct is claimed to constitute unfair competition which warrants an award of punitive damages.  *Id*. ¶¶ 21 & 25.

### A.    Litigation in the Northern District of Georgia

Tillotson filed suit in the Northern District of Georgia on June 7, 2005, alleging infringement of the Reissue '616 Patent by certain gloves manufactured by Shiziahaung Hongray Plastic Products, Ltd. ("Hongray") and sold by Darby Dental Supply Co. ("Darby Dental") and Island Dental Co., Inc. ("Island Dental").  *See* Tillotson Mem., Ex. B (Second Am. Compl., *Tillotson Corp. v. Shijazhaung Hongray Plastic Products, Ltd. et al.*, No. 4:05-118 (N.D. Ga. filed Nov. 8, 2005) ("Georgia Litigation")).  Island Dental and Darby Dental filed a counterclaim for non-infringement and invalidity of the Reissue '616 Patent and filed a third-party crossclaim against Ansell.  *See* Tillotson Mem., Exs. C & D.  While Tillotson urges the Court to transfer this suit to Georgia for consolidation with the Georgia Litigation, Ansell informs the Court that the Georgia Litigation has been stayed pending resolution of the ITC investigation, pursuant to 28 U.S.C. § 1659.  *See* Ansell Counterclaimant's Opp'n to Tillotson's Mot. to Dismiss for Improper Venue or in the Alternative to Transfer ("Ansell Opp'n") [Dkt. # 11] at 14.

### B.     Litigation in the District of Delaware

Ansell first filed suit against Tillotson in the District of Delaware on August 25, 2006, seeking a declaratory order that its products do not infringe the Reissue '616 Patent. *See* Tillotson's Reply in Supp. of Mot. to Dismiss for Improper Venue or in the Alternative to Transfer ("Tillotson Reply") [Dkt. # 12], Ex. K (Compl., *Ansell Healthcare Products LLC v. Tillotson Corp*. (D. Del. filed Aug. 25, 2006); Compl., *Ansell Protective Products, Inc. v. Tillotson Corp*. (D. Del. filed Feb. 20, 2007) ("Delaware Litigation")). In response to the August 2006 complaint, Tillotson accused Ansell Healthcare of infringing the Reissue '616 Patent with respect to certain gloves. The February 2007 lawsuit was filed because "[i]t is Ansell Protective Products rather than Ansell Healthcare . . . that sells these gloves." *See* Tillotson Reply, Ex. K ¶ 8. The current status of the Delaware Litigation is not revealed by the parties.

### C.     Litigation in the ITC

On May 30, 2007, Tillotson filed a Section 337 Complaint[1] with the ITC, requesting an investigation into the alleged unlawful sale and importation into the United States of nitrile gloves that utilize the invention claimed in Tillotson's Reissue '616 Patent. *See In the Matter of Certain Nitrile Gloves*, U.S. Int'l Trade Comm'n Inv. No. 337-TA-608, Fed. Reg. 37052 (July 6, 2007). The ITC action named Ansell's parent company, Ansell Ltd., a respondent in the investigation. *Id*. On September 6, 2007, Tillotson moved to amend its original complaint to include several additional respondents, including Ansell. *See* Order 21, *In the Matter of Certain Nitrile Gloves*, U.S. Int'l Trade Comm'n Inv. No. 337-TA-608. The ITC granted that motion on September 20, 2007. *See*

---

[1] 19 U.S.C. § 1337 and 19 C.F.R. § 210.12 authorize complaints to be filed with the ITC for investigation into alleged unfair practices in import trade.

72 Fed. Reg. 58884 (Oct. 17, 2007).  Trial on the ITC investigation took place in May 2008.

Ansell filed the instant Counterclaim with the ITC on April 4, 2008, and a day later removed it to this Court.  *See* 19 U.S.C. § 1337(c); 19 C.F.R. § 210.14(e) (allowing removal of timely counterclaims to U.S. District Court with appropriate venue).  On April 24, 2008, Tillotson filed a Motion for a More Definite Statement [Dkt. # 3], in response to which Ansell filed an Amended Counterclaim on April 28, 2008 [Dkt. # 5].  Tillotson's Motion to Dismiss for Improper Venue or in the Alternative to Transfer [Dkt. ## 6 & 8] was filed on May 15, 2008, and is now fully briefed.

## II.  DISCUSSION

Tillotson challenges venue in this Court and, alternatively, asks the Court to transfer this matter to Georgia or Delaware.  The Court believes it would be wholly inappropriate to transfer this case to Georgia, and thereby rob Ansell of its statutory right to litigate its Counterclaim in federal court, because defendants in the Georgia Litigation (of which Ansell is not one) have elected to stay that case pending the ITC disposition.  Ansell, however, controls its own complaints in the Delaware Litigation, and offers no reason why the instant Counterclaim could not, and should not, be joined before a single court.  According to Tillotson, the Delaware Litigation arises from the same nucleus of facts, involves the same witnesses, and would use the same documents or sources of proof.  *See* Tillotson Reply at 7.  The Court will therefore transfer this case to the District of Delaware.

The purpose of 28 U.S.C. § 1404(a) is "to prevent the waste of 'time, energy and money' and 'to protect the litigants, witnesses and the public against unnecessary inconvenience and expense.'"  *See Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (citation omitted).  "Transfer under

section 1404(a) involves a multi-part analysis:  first, the court must determine that venue is proper in the transferor district; next, it must ensure both jurisdiction and venue will lie in the proposed transferee district; and finally, it must weigh several private and public interest factors to determine whether transfer would, indeed, be 'in the interest of justice.'" *See Elemary v. Holzmann*, 533 F. Supp. 2d 144, 149 (D.D.C. 2008).  "The moving party has the burden of establishing that transfer is appropriate." *Al-Ahmed v. Chertoff*, No. 08-678, 2008 U.S. Dist. LEXIS 53237, at *2 (D.D.C. July 14, 2008) (citation omitted).

The private interest factors to be considered by the court include the following:  (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) where the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant, to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof.  *See Elemary*, 533 F. Supp. 2d at 150 (citing *Trout Unlimited v. U.S. Dep't of Ag.*, 944 F. Supp. 13, 16 (D.D.C. 1996)).  The public interest factors include:  "(1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *Trout Unlimited*, 944 F. Supp. at 16.  Courts ordinarily defer to a plaintiff's choice of forum unless that plaintiff is a non-resident, lacking a substantial connection to the chosen forum. *Elemary*, 533 F. Supp. 2d at 150.  Here, consideration of the relevant factors favors transfer to the District of Delaware.

It is clear on the facts in this record that this case could have been brought in the District of Delaware, where almost two years ago Ansell filed its declaratory judgment action against Tillotson raising the same or similar issues.  Venue in that District would be proper under 28 U.S.C.

§ 1391(a)(2), which allows, in a case based on diversity of citizenship, venue in any judicial district where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."

The majority of private interest factors weigh in favor of transfer. First, Ansell is not entitled to deference in its choice of forum because the District of Columbia has "no meaningful" ties to the controversy and no particular interest to the parties or subject matter. *See Greater Yellowstone Coal. v. Kempthorne*, No. 07-2111, 2008 WL 1862298, at *3 (D.D.C. Apr. 24, 2008). Ansell is organized under the laws of Delaware with a principal place of business in New Jersey and Tillotson is a Massachusetts corporation. *See* Am. Compl. ¶¶ 2-3. The Delaware Litigation involves the same parties who are litigating the same underlying issues, that is, the validity and infringement of the Reissue '616 Patent. Transfer of this case is also in the interest of prospective witnesses because such witnesses will not have to travel to several different jurisdictions to testify regarding the validity or infringement of the Reissue '616 Patent. *See Mathis v. GEO Group, Inc.*, 535 F. Supp. 2d 83, 87 (D.D.C. 2008) ("Indeed, the most critical factor to examine under 28 U.S.C. § 1404(a) is the convenience of the witnesses.") (internal quotation marks and citations omitted)).

This Court is confident that the District of Delaware is equipped to handle this infringement action. *See Trout Unlimited*, 944 F. Supp. at 16. The parties have presented no evidence regarding the relative congestion of the respective courts but the Court has "no reason to suspect the [District of Delaware]'s docket could not accommodate this case." *See Veney v. Starbucks Corp.*, No. 07-875, 2008 U.S. Dist. LEXIS 47309, at *11 (D.D.C. June 19, 2008) (citations omitted). "Furthermore, the case has not evolved past the earliest stages of litigation, and the proposed transfer would not unduly delay the case's progress." *Id*. (citation omitted).

### III.  CONCLUSION

For the foregoing reasons, this case will be transferred to the United States District Court for the District of Delaware.  A memorializing order accompanies this Memorandum Opinion.


Date: July 30, 2008                                   _____/s/_____
                                                      ROSEMARY M. COLLYER
                                                      United States District Judge