**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ANSELL HEALTHCARE PRODUCTS LLC, and ANSELL PROTECTIVE PRODUCTS INC.,** | |
| **Counterclaimants,** | **C.A. 1:08-CV-585-RMC** |
| **v.** | |
| **TILLOTSON CORPORATION,** | |
| **Counterclaim Defendant.** | |

**ANSELL'S MEMORANDUM IN OPPOSITION TO**
**TILLOTSON'S MOTION TO STAY PROCEEDINGS**

**I.    INTRODUCTION**

This Counterclaim was filed in the United States International Trade Commission ("ITC") by counterclaimants Ansell Healthcare Products LLC and Ansell Protective Products Inc. (collectively "Ansell") on April 3, 2008.  The Counterclaim was removed to this Court pursuant to 19 U.S.C. § 1337(c) and 19 C.F.R. § 210.14(e) on April 4, 2008.  Counterclaim defendant Tillotson Corporation ("Tillotson") has now filed three dilatory motions in the hopes of deferring an adjudication of the claims asserted by Ansell while it continues to enter into agreements with customers and potential customers of Ansell, whereby those customers and potential customers agree not to purchase nitrile gloves from distributors such as Ansell for the lifetime of Tillotson's U.S. Patent No. Re. 35,616 ("the '616 patent").

On April 23, 2008, Tillotson first filed a frivolous and disfavored motion for a more definitive statement. Notwithstanding the provisions of Fed. R. Civ. P. 8(a)(1), Tillotson claimed that Ansell was obliged to allege facts from which Tillotson could ascertain the choice of law. Rather than contribute to the delay that responding to the motion would cause, Ansell simply filed and served an Amended Counterclaim and mooted Tillotson's motion. Even though not entitled to make a second Rule 12 motion this time now attacking venue, *see* Fed. R. Civ. P. 12(g)(2), Tillotson did so on May 15, 2008. That motion has since been denied.

Tillotson has now, on July 29, 2008, almost four months after this Counter-claim was filed, moved to stay this case until a final decision in the ITC, which is expected by November 24, 2008. [*See* Tillotson Mem. at 2]. There is no good cause for a stay; there will be no hardship or unfairness to Tillotson if a stay is denied; and Ansell would be prejudiced if the stay is granted. Tillotson's motion for a stay should be denied.

## II.    ARGUMENT

### A.    The Equities Do Not Favor The Stay Requested By Tillotson

As noted by Tillotson citing *Fairview Hospital v. Leavitt*, C.A. No. 05-1065 (RWR), 2007 WL 1521233 at *1-3 (D.D.C. May 22, 2007), the "Court should consider several factors in weighing the equities of a stay, including the stay's: (1) impact on the efficient reso-lution of this case; (2) effect on the use of judicial resources; (3) ability to avoid inconsistent judgments; and (4) potential to threaten undue prejudice to Ansell." [Tillotson Mem. at 3]. An analysis of these four factors does not favor the stay requested by Tillotson.

1.    **A stay will disrupt the efficient resolution of this case.**

The first item of relief set forth in Ansell's Counterclaim is the request for "[a] permanent injunction prohibiting Tillotson from asserting or threatening to assert infringement of the Reissue '616 patent against the Ansell counterclaimants, their related corporations, their suppliers, their customers and their potential customers." [Counterclaim at p. 6]. The '616 patent expires on May 11, 2010, so time is of the essence in order for the requested injunctive relief to be meaningful. Since most of the discovery on the issues of patent invalidity and unenforceability has been completed in the ITC proceeding from which this Counterclaim was removed, only a short fact discovery period is needed. The parties met and agreed on the following schedule which was submitted to the Court on July 11, 2008:

| | |
|---|---|
| Rule 26(a) Initial Disclosures | July 25, 2008 |
| Deadline for Joinder of Parties | **[Ansell position]** August 8, 2008<br><br>**[Tillotson position]** 45 days from service and filing of Answer |
| Deadline for Amendment of Pleadings | 30 days from service and filing of Answer |
| Close of Fact Discovery | October 24, 2008 |
| Opening Expert Reports on Issues on Which Party Bears Burden of Proof at Trial | November 21, 2008 |
| Responsive Expert Reports | December 19, 2008 |
| Completion of Expert Depositions | January 30, 2009 |

| Last Day to File Dispositive Motions | March 2, 2009 |
| --- | --- |
| Oppositions to Dispositive Motions Due | March 23, 2009 |
| Reply Briefs in Support of Dispositive Motions | April 6, 2009 |
| Pretrial Conference | |
| Trial Begins | |

Hopefully, this will permit a trial during the summer of 2009.

Staying the case would clearly disrupt this agreed-upon schedule and the efficient and just resolution of this case. It is no mere bromide that justice delayed is justice denied. Indeed, it is a fundamental precept that the Federal Rules of Civil Procedure should be "administered to secure the just, speedy and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. This factor militates against a stay.

### 2. A stay will not conserve judicial resources.

Tillotson argues in conclusory fashion that "[s]taying the present action would prevent the waste of judicial time and money that would result from re-litigating the same issues that the ITC will decide in less than four months." [Tillotson Mem. at 6]. Tillotson does not explain **how** judicial resources would be conserved by a stay, because it can not. First, whatever the ITC decides, it is established law that "the ITC's determinations regarding patent issues should be given no res judicata or collateral estoppel effect." *Texas Instruments Inc. v. United States Int'l Trade Comm'n*, 851 F.2d 342, 344 (Fed. Cir. 1988); *see also Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1568-70 (Fed. Cir. 1996). Only by ignoring

this controlling precedent can Tillotson argue that a stay will narrow the issues.[1/] Moreover, after the filing of the motion for stay, Tillotson's counsel was asked whether Tillotson would agree to be bound by the ITC's decision, and Tillotson declined to do so.  [*See* Declaration of Thomas B. Kenworthy ("Kenworthy Decl.") at ¶ 2].

This is a jury trial, so any findings of fact by the ITC will have no impact on the resolution of the fact issues that will be decided by the jury in this case.[2/]  To the extent Tillotson is arguing that this Court would be benefited by having the analyses of the ALJ and the ITC on certain issues of law that may also arise in this case, a stay is not needed to confer

---

[1/]  Given this controlling Federal Circuit precedent, the unexplained conclusion by the Court in *Iljin USA v. NTN Corp.*, No. 06-10145, 2006 WL 568351 *2 (E.D. Mich. 2006 Mar. 7, 2006), that a stay of the District Court proceeding pending a final determination in the ITC would "narrow the issues" does not appear to be well-grounded.  More importantly, the *Iljin* case did not involve staying a case where such a stay would clearly prejudice the party resisting the stay and provide a strategic advantage to the party seeking the stay.  Similarly, aside from the differences in the grounds that supported a stay in *Flexsys Americas, LP v. Kumbo Tire, U.S.A., Inc.*, No. 5:05cv156, 2005 WL 1126750 (N.D. Ohio Apr. 29, 2005), the *Flexsys* Court found that the party opposing the stay would "not be prejudiced by a stay of th[e] case" while the denial of a stay "would create an undue burden on defendants."  *Id.* at *3.

[2/]  Tillotson also argues at pages 4 and 5 of its Memorandum that a hypothetical finding in its favor by the ITC would undercut the "objectively baseless" element that Tillotson apparently believes is required to sustain Ansell's counterclaims.  This is a complete red herring.  While the decision of the ITC as to the validity or enforceability of the '616 patent may provide evidence favorable to one side or the other insofar as whether Tillotson's pursuit of infringement claims are "objectively baseless," Ansell's counterclaims **do not** require that Tillotson's pursuit of its infringement claims be objectively baseless.  Ansell's claims are also predicated on the independent ground that Tillotson is using a fraudulently obtained patent in an anti-competitive manner.  The "objectively baseless" prong of the two-part test applicable to sham litigation claims **is not** applicable to the independent theory of liability based on the enforcement of a patent obtained by fraud.  *See Nobelpharma AB v. Implant Innovations, Inc.*, 129 F.3d 1463, 1472 (Fed. Cir. 1997).  Thus, even **if** the ITC were to decide that the '616 patent was neither invalid nor unenforceable, it would not eliminate Ansell's claims against Tillotson, as Tillotson suggests.

that benefit.  As Tillotson recognizes, the ALJ's decision is due "no later than August 25, 2008" and "[t]he ITC then has until November 24, 2008 to adopt or reject the ALJ's decision." [Tillotson Mem. at 2].  This Court thus will not be called upon to decide any of the patent-related issues that are implicated in both this case and the ITC proceedings until **after** both the ALJ and the ITC have issued their rulings.  A stay is totally **unnecessary** to provide this Court with the benefit of having those rulings and analyses available to it when it is called upon to address those issues.

The second factor thus does not weigh in favor of a stay.

### 3.     There is no concern about decisions of a District Court and the ITC being inconsistent.

Tillotson argues that "[w]ith the ITC action still pending, the Court cannot determine how the ITC will address the '616 patent's validity and enforceability.  A stay would minimize the risk of inconsistent rulings on these issues."  [Tillotson Mem. at 6].  First, as discussed above and in the section of this memorandum relating to the doctrine of primary jurisdiction, *infra*, there is no legislative or judicial policy that the decisions of District Courts should be consistent with the decisions of the ITC.  Moreover, it should be reiterated that a stay will have no impact on the risk of inconsistent rulings in this case, because even without a stay, the patent issues **will have already been decided by the ITC** before this Court will be obliged to decide them.

The third factor does not favor a stay.

**4.    Tillotson has not made out a clear case of hard-
ship or inequity in being required to go forward
when, as here, there is a fair possibility that the
stay it seeks will work damage to Ansell.**

Although a trial court has broad discretion to stay proceedings in an action pend-

ing resolution of independent proceedings elsewhere, the Supreme Court has noted that "the

suppliant for a stay must make out a clear case of hardship or inequity in being required to go

forward, if there is even a fair possibility that the stay for which he prays will work damage to

someone else." *Landis v. North American Co.*, 299 U.S. 248, 255 (1936); *see also GFL Advan-

tage Fund, Ltd. v. Colkitt*, 216 F.R.D. 189, 193 (D.D.C. 2003) ("The party requesting such a

stay must make out a clear case of hardship or inequity to prevail.").  Here, in the face of this

Counterclaim, Tillotson is **continuing** the very tortious activity that gave rise to this suit, and it

has refused to agree that it will refrain from doing so during the pendency of any stay that may

be entered.  [Kenworthy Decl., ¶ 2].

By pursuing or threatening extremely expensive litigation regarding the alleged

infringement of the '616 patent that is both invalid and unenforceable, Tillotson has coerced a

number of entities, including a former customer of Ansell, to enter into agreements which have

the effect of precluding them from purchasing Ansell's nitrile gloves that compete against

Tillotson's licensees.  [*See, e.g.*, Kenworthy Declaration, ¶¶ 3-5 and Ex. A].  Once customers

are lost to a competitor it is difficult to gain them back, and Tillotson will no doubt argue that

a claim for future losses of sales even after the '616 patent expires in May of 2010, are not

recoverable.

In the face of the demonstrable possibility of damage to Ansell, Tillotson has

not even purported to make out a clear case of hardship or inequity in being required to go

forward with this case over the next three months.  Indeed, had Tillotson made a claim of

hardship or inequity, it would have been belied by Tillotson's delay in even moving for a stay until four months into the case, and **after** Tillotson's initial disclosures and responses to Ansell's interrogatories and document requests were due.

The fourth factor not only fails to support the issuance of a stay, it mandates that Tillotson's motion be denied.

### B.     The Doctrine Of Primary Jurisdiction Pro-
###         vides No Support For A Stay In This Case

Tillotson argues that the doctrine of primary jurisdiction favors a stay of this case. [Tillotson Mem. at 7-10].  The doctrine of primary jurisdiction, however, has no applicability here and in no way favors a stay of this litigation.

The determination of the validity and enforceability of patents has **not** been placed within the special competence of the ITC.  Indeed, the Federal Circuit has noted this on several occasions.  In *Tandon Corp. v. U.S. International Trade Commission*, 831 F.3d 1017, 1019 (Fed. Cir. 1987), the Federal Circuit observed that the ITC's "responsibility is to administer the trade laws, **not the patent laws.**"  (Emphasis added).  The Federal Circuit quoted from the Senate Report accompanying the Trade Act of 1974:

> [I]n patent-based cases the Commission considers, for its own purposes under section 337, the status of imports with respect to the claims of U.S. Patents.  The Commission's findings neither purport to be, nor can they be, regarded as binding interpretations of the U.S. patent laws in particular factual contexts.

S. Rep. No. 1298**,** 93d Cong., 2d Sess. 196, *reprinted in* 1974 U.S. Code Cong. & Admin. News 7186, 7329.  *Tandon*, 831 F.2d at 1019.  More recently, the Federal Circuit aptly again quoted

from the same Senate Report in *Bio-Technology General Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1564 (Fed. Cir. 1996):

> The Commission is not, of course, empowered under existing law to set aside a patent as being invalid or to render it unenforceable, and the extent of the Commission's authority under this bill is to take into consideration such defenses and to make findings thereon for the purposes of determining whether section 337 is being violated.

Establishing that a patent is invalid or unenforceable is a form of relief that "may only be provided by the **United States District Courts, which have original and exclusive jurisdiction over patent infringement cases.**" *Id.* (Emphasis added).

Tillotson cites *Meditech Int'l Co. v. Minigrip, Inc.*, 648 F. Supp. 1488, 1496 (N.D. Ill. 1986), for the proposition that the test to determination whether the doctrine of primary jurisdiction applies is "whether some parts of the case are within the exclusive jurisdiction of the agency."[3/] [Tillotson Mem. at 7-8]. However, as shown above, **no parts** of this case are within the exclusive jurisdiction of the ITC. Tillotson's reliance on the doctrine of primary jurisdiction is completely misplaced, and that doctrine provides no basis for a stay of this action.

---

[3/] Ansell has no dispute with this statement of the law vis-à-vis the doctrine of primary jurisdiction, but notes that the factual circumstances of the *Meditech* case are materially different from those in this case. In *Meditech*, the plaintiff's claim was predicated on the contention that the defendant had "unlawfully influenced the Commission to issue overbroad exclusion orders." 648 F. Supp. at 1493. The *Meditech* Court noted that the ITC had inherent power to correct its own errors, especially where those errors are caused by fraud, as was alleged by Meditech. *Id.* at 1496. The Court accordingly found that Meditech's arguments as to the asserted overbreadth of an ITC Order and the cause of that overbreadth must first be tendered to the ITC. *Id.* Ansell is by no means attempting to collaterally attack any Order of the ITC in this action.

C.    **Tillotson's Request, In The Alternative, That Discovery Be Stayed Pending The <u>Outcome Of Its Motion To Dismiss Is Moot</u>**

The Court, having denied Tillotson's motion to dismiss, the request, in the alternative, that discovery be stayed pending the outcome of that motion has been mooted.

### III.    <u>CONCLUSION</u>

For all the foregoing reasons, Ansell respectfully submits that Tillotson's Motion to Stay Proceedings should be denied.

Respectfully submitted,

DATED:   August 12, 2008

_____/s/_____

David M. Morris (D.C. Bar No. 432593)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004
Telephone:  (202) 739-5882
Facsimile:  (202) 739-3001
dmorris@morganlewis.com

and

Thomas B. Kenworthy (Admitted Pro Hac Vice)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania  19103-2921
Telephone:  (215) 963-5702
Facsimile:  (215) 963-5001
tkenworthy@morganlewis.com

*Counsel for Counterclaimants
Ansell Healthcare Products LLC
and Ansell Protective Products Inc.*

## CERTIFICATE OF SERVICE

I, DAVID M. MORRIS, do hereby certify that on this date, I caused copies of the foregoing Ansell's Memorandum In Opposition To Tillotson's Motion To Stay Proceedings to be served upon the following individuals by Electronic and First Class Mail:

Brian Meiners, Esquire
KING & SPALDING LLP
1700 Pennsylvania Avenue, N.W.
Suite 200
Washington, DC  20006-2706

Russell Wofford, Jr., Esquire
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309

*Counsel for Counterclaim Defendant*
*Tillotson Corporation*

DATED:    August 12, 2008                          /s/
                                                                    DAVID M. MORRIS

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

**ANSELL HEALTHCARE PRODUCTS LLC, and ANSELL PROTECTIVE PRODUCTS INC.,**

          **Counterclaimants,**

    v.

**TILLOTSON CORPORATION,**

          **Counterclaim Defendant.**

**C.A. 1:08-CV-585-RMC**

## DECLARATION OF THOMAS B. KENWORTHY

       I, THOMAS B. KENWORTHY, acknowledging that this declaration is made under penalty of perjury, state that to the best of my knowledge, information and belief, the following facts are true and correct:

       1.    I am a partner in the law firm of Morgan, Lewis & Bockius LLP and lead counsel for Ansell Healthcare Products LLC and Ansell Protective Products Inc. (collectively "Ansell"), the Counterclaimants in this action on whose behalf I have been admitted *pro hac vice*.

       2.    After Tillotson filed its Motion to Stay Proceedings, I inquired of Tillotson's counsel as to (a) whether Tillotson was willing to agree to be bound by the ITC determination, and (b) whether Tillotson would agree not to enter into any settlement agree-

ments with suppliers, customers and potential customers of Ansell during the pendency of the stay Tillotson was requesting. Tillotson has not agreed to do either.

3.    Attached hereto as Exhibit A is a true and correct copy of a Consent Order Stipulation among Tillotson Corporation ("Tillotson") and Darby Group Companies Inc. and Darby Dental Supply, LLC (collectively "Darby"). While the Stipulation itself is undated, it was filed with the ITC on June 4, 2008.

4.    The Consent Order Stipulation does not grant Darby a license to the '616 patent and it does not release Darby from liability to Tillotson for its past sales of nitrile gloves.

5.    Nevertheless, in exchange for being relieved of the further costs and expenses of the ITC investigation, Darby agreed not to, *inter alia*, sell in the United States any of the nitrile gloves that were the subject of the ITC investigation unless licensed by Tillotson or the gloves had been purchased from a licensed supplier. This agreement will remain in effect, notwithstanding a finding of invalidity or unenforceability by the ALJ in the ITC proceedings, until the determination by the ITC becomes final and all appeals are exhausted.

6.    Neither Ansell Healthcare Products LLC nor Ansell Protective Products Inc. are licensed under the '616 patent.

DATED:  August 12, 2008

THOMAS B. KENWORTHY

- 2 -

# Exhibit A

# UNITED STATES INTERNATIONAL TRADE COMMISSION
## Washington, D.C.

### Before the Honorable Theodore R. Essex
### Administrative Law Judge

|  |  |
|---|---|
| In the Matter of ) <br> ) <br> CERTAIN NITRILE GLOVES ) <br> ) | Investigation No. 337-TA-608 |

AND

|  |  |
|---|---|
| In the Matter of ) <br> ) <br> CERTAIN NITRILE RUBBER GLOVES ) <br> ) | Investigation No. 337-TA-612 |

## CONSENT ORDER STIPULATION

WHEREAS, the United States International Trade Commission on June 29, 2007, instituted the above-captioned Investigation under Section 337 of the Tariff Act of 1930, as amended (19 U.S.C. § 1337), based on the allegations contained in the Complaint filed by Complainant Tillotson Corporation ("Complainant"), which alleges unfair acts in the importation into the United States, the sale for importation and the sale within the United States after importation of certain nitrile gloves ("Nitrile Gloves") by Respondent Darby Group Companies, Inc. ("Darby Group").

WHEREAS, Darby Group is willing to accept entry of the Consent Order submitted concurrently herewith by the International Trade Commission and to agree to all waivers and other provisions as required by 19 C.F.R. § 210.21;

WHEREAS, Darby Group and its affiliate Darby Dental Supply, LLC ("DDS") (collectively referred to herein as "Darby") agree to all terms set forth in the Consent Order;

IT IS HEREBY STIPULATED by Darby and Complainant in support of the Motion to Terminate Based Upon Entry of a Consent Order as follows:

1.    The Commission has *in rem* jurisdiction over the subject Nitrile Gloves which are the subject of the Complaint in this Investigation and the Commission has *in personam* jurisdiction over Darby Group for purposes of this Stipulation and proposed Consent Order by virtue of Darby Group having appeared through counsel in this proceeding. Nothing in this Stipulation or the proposed Consent Order shall be construed as meaning that Darby Group has submitted to the jurisdiction of any other court.

2.    Darby expressly waives all right to seek judicial review or otherwise challenge the validity of the Consent Order, other than to seek compliance or enforcement of the same.

3.    Darby will cooperate with and will not seek to impede by litigation or other means the Commission's efforts to gather information under Subpart I of the Commission's Rules of Practice and Procedure, 19 C.F.R. Part 210.

4.    The enforcement, modification and revocation of the Consent Order will be carried out pursuant to Subpart I of the Commission's Rules of Practice and Procedure, 19 C.F.R. Part 210. In determining whether Darby is in violation of the Consent Order, the Commission may infer facts adverse to Darby if Darby fails to provide adequate or timely information. The Commission may impose upon any person who violates this Consent Order the penalties available in 19 U.S.C. §1337(f)(2).

5.    The Consent Order shall not apply with respect to any claim of an intellectual property right that has expired or been found or adjudicated invalid or unenforceable by the

Commission or a court or agency of competent jurisdiction, provided that such finding or judgment has become final and nonreviewable.

6.     Darby will not seek to challenge the validity of U. S. Patent No. 35,616 ("'616 Patent") which forms the basis for the Complaint in any administrative or judicial proceeding to enforce the Consent Order.  In the event that Tillotson initiates or advances claims of patent infringement regarding the '616 Patent in any court of competent jurisdiction against Darby, Darby expressly reserves its right to raise any and all claims and defenses in such an action, including but not limited to challenging the validity and enforceability of the "'616 Patent and further reserves its right to introduce evidence, cross-examine witnesses, and otherwise participate in such an action.

7.     The signing of this Consent Order Stipulation is for settlement purposes only and does not constitute an admission by Darby that an unfair act or any other wrongdoing has been committed.

8.     Darby stipulates that it shall not sell for importation, import into the United States or sell in the United States after importation, or aid, abet, encourage, participate in, or induce the sale for importation, the importation into the United States, or the sale in the United States after importation of the Nitrile Gloves which are the subject of this Investigation or which infringe the '616 Patent, except under consent or license from Complainant, its successors or assigns. Complainant affirmatively represents that the entities listed in Exhibit A hereto are each a licensed supplier who has executed a license agreement with Complainant to sell Nitrile Gloves in exchange for the payment of royalties and who is in compliance with the terms of that license agreement ("Licensed Supplier"). Notwithstanding anything to the contrary contained herein, Darby's purchase of Nitrile Gloves from such Licensed Suppliers and the subsequent sale thereof

shall not violate the Consent Order and shall not subject Darby to penalties hereunder. If any additional entities become Licensed Suppliers or cease to be Licensed Suppliers, Tillotson must notify Darby in writing within ten (10) days of such a change at the following addresses: Darby Group Companies, Inc., Attn: Justina Gordon, 300 Jericho Quadrangle, Jericho, NY 11753; Darby Dental Supply, LLC, Attn: Gary Rosenberg, 300 Jericho Quadrangle, Jericho, NY 11753. It is expressly acknowledged and agreed to by the parties that any purchases of gloves by Darby from Licensed Suppliers shall not be considered a violation of or an infringement of the Subject Intellectual Property, nor shall Darby be obligated to pay to Complainant or any other person or entity any royalties or sums for damages nor shall such sales be included in any damage claim asserted by Complainant against Darby with respect to such sales. Notwithstanding any terms or conditions of this Stipulation or the Consent Order to the contrary, this provision shall survive the expiration of the Consent Order.

9.     When the '616 Patent expires, the Consent Order shall be null and void, including but not limited to Darby's obligation to purchase Nitrile Gloves only from Licensed Suppliers.

10.     This Consent Order Stipulation and Consent Order are in the public interest.

11.     The parties agree that they will take no action to lift any stay, filed pursuant to 28 U.S.C. §1659, until the determination of the Commission, in Investigation Nos. 608 and 612, becomes final and all appeals are exhausted.

**IT IS SO STIPULATED**
*Darby Group Companies, Inc.*

_____    _____
Michael Caputo, President    *Tillotson Corporation.*

*Darby Dental Dental Supply, LLC*

_____
Gary Rosenberg, President

- 5 -

IT IS SO STIPULATED

Dated: _____, 2008

Darby Group Companies, Inc.

Dated: _____, 2008

Darby Dental Supply, LLC

Dated: _____, 2008

Tillotson Corporation

# EXHIBIT A

# Exhibit A

AmerCare Inc.

Ammex Corporation

Ascend Eagle Incorporated

Best Glove Inc.

Delta Hospital Supply Inc.

Delta Medical Systems Inc.

Delta Medical Supply Group, Inc.

Dynarex Corporation

Global Glove and Safety Manufacturing Inc.

Gloveco Inc.

Haiku Holdings Ltd.

High Five Products Inc.

Iron Bridge Tools Inc.

KNK Medical-Dental Specialties, Ltd.

Magla Products LLC

Malaytex USA, Inc.

Maxter Glove Manufacturing Sdn. Bhd.

Medline Industries Inc.

Microflex Corporation

Omni International LLC

Safeskin Corporation

Safeskin Scientific Corporation

SAS Safety Corporation

Sempermed USA Inc.

Shein Wei USA Inc.

Shijiazhuang Hongray Plastic Products Ltd.

The Safety Zone LLC

Supermax Corporation Bhd.

Supermax Latex Products Sdn. Bhd.

Supermax Glove Manufacturing Sdn. Bhd.

Seal Polymer Industries Bhd.

Tradex International Inc.

Tronex International, Inc.

West Chester Holdings Inc.

Young PS Acquisitions LLC d/b/a Plak Smacker

Zhangjiagang Dayu Rubber Products Co. Ltd.

Zhenjiang Kangda Emulsion Co. Ltd.

Zhenjiang Suhui Latex Products Co. Ltd.

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**Washington, D.C.**

Before the Honorable Theodore R. Essex
Administrative Law Judge

| | |
|---|---|
| In the Matter of ) | |
| ) | |
| CERTAIN NITRILE GLOVES ) | Investigation No. 337-TA-608 |
| ) | |

AND

| | |
|---|---|
| In the Matter of ) | |
| ) | |
| CERTAIN NITRILE RUBBER GLOVES ) | Investigation No. 337-TA-612 |

**PROPOSED CONSENT ORDER AS TO**
**RESPONDENT DARBY GROUP COMPANIES, INC.**

The United States International Trade Commission on June 29, 2007, instituted the

above-captioned Investigation under § 337 of the Tariff Act of 1930, as amended (19 U.S.C.

§ 1337), based upon the allegations contained in the Complaint filed by Tillotson Corporation

("Complainant"), which allege unfair acts in the importation into the United States, the sale for

importation and the sale within the United States after importation of certain nitrite gloves

("Nitrite Gloves") by, among others, Respondent Darby Group Companies, Inc. ("Darby").

Darby has executed a Consent Order Stipulation in which it agrees to the entry of this

Consent Order and to all waivers and other provisions as required by the Commission's Rules of

Practice and Procedure 210.21(c) (19 C. F. R. § 210.21 (c)), and has filed a Motion for

Termination of Investigation with respect to Respondent Darby.

NOW, THEREFORE, the Commission issues the following Consent Order:

1.      Upon entry of this Consent Order, Darby shall not sell for importation, import into the United States or sell in the United States after importation, or aid, abet, encourage, participate in, or induce the sale for importation, the importation into the United States, or the sale in the United States after importation of the Nitrile Gloves which are the subject of this Investigation or which infringe U. S. Patent No. 35,616 ("'616 Patent"), except under consent or license from Complainant, its successors or assigns. Complainant affirmatively represents that the entities listed in Exhibit A hereto are each a licensed supplier who have executed a license agreement with Complainant to sell Nitrile Gloves in exchange for the payment of royalties ("Licensed Supplier"). Notwithstanding anything to the contrary contained herein, Darby's purchase of Nitrile Gloves from such Licensed Suppliers shall not violate the Consent Order and shall not subject Darby to penalties hereunder. If any additional entities become Licensed Suppliers or cease to be Licensed Suppliers, Tillotson must notify Darby in writing within ten (10) days of such a change at the following address: Darby Group Companies, Inc., Attn: Justina Gordon, 300 Jericho Quadrangle, Jericho, NY 11753. It is expressly acknowledged and agreed to by the parties that any purchases of gloves by Darby from Licensed Suppliers and the subsequent sale thereof shall not be considered a violation of or an infringement of the '616 Patent, nor shall Darby be obligated to pay to Complainant or any other person or entity any royalties or sums for damages nor shall such sales be included in any damage claim asserted by Complainant against Darby with respect to such sales. Notwithstanding any terms or conditions of this Consent Order to the contrary, this provision shall survive the expiration of this Consent Order.

2.      Darby waives all rights to seek judicial review or otherwise challenge the validity of this Consent Order.

3.    Darby will not seek to challenge the validity of the '616 Patent that forms the basis for the Complaint in any administrative or judicial proceeding to enforce the Consent Order. In the event that Tillotson initiates or advances claims of patent infringement regarding the '616 Patent in any court of competent jurisdiction against Darby, Darby expressly reserves its right to raise any and all claims and defenses in such an action, including but not limited to challenging the validity and enforceability of the '616 Patent, and further reserves its right to introduce evidence, cross-examine witnesses, and otherwise participate in such an action.

4.    The signatories of the Consent Order Stipulation shall cooperate with and shall not seek to impede by litigation or other means the Commission's efforts to gather information under Subpart I of the Commission's Rules of Practice and Procedure, 19 C.F.R. Part 210.

5.    The enforcement, modification and revocation of this Consent Order will be carried out pursuant to Subpart I of the Commission's Rules of Practice and Procedure, 19 C.F.R. Part 210.

6.    Darby understands and acknowledges that if the Commission enters this Consent Order, Darby will have waived its right to introduce evidence, cross-examine witnesses, and otherwise participate in the Investigation in any fashion. In the event that Tillotson initiates or advances claims of patent infringement in any court of competent jurisdiction against Darby, Darby expressly reserves its right to introduce evidence, cross-examine witnesses, and otherwise participate in such an action.

7.    The Consent Order shall not apply with respect to any claim of an intellectual property right that has expired or been found or adjudicated invalid or unenforceable by the Commission or a court or agency of competent jurisdiction, provided that such finding or

- 3 -

judgment has become final and nonreviewable. This Order does not constitute a finding that Darby has committed an unfair act or any other wrongdoing.

8.    This Investigation is hereby terminated with respect to Darby, and Darby is hereby dismissed as a named respondent in this Investigation.

9.    The enforcement, modification, or revocation of this Consent Order shall be carried out pursuant to Subpart I of the Commission's Rules of Practice and Procedure, 19. C. F. R. Part 210. In determining whether Darby is in violation of this Consent Order, the Commission may infer facts adverse to Darby if Darby fails to provide adequate or timely information. The Commission may impose upon any person who violates this Consent Order the penalties available in 19 U.S.C. §1337(f)(2).

10.    The parties agree that they will take no action to lift any stay, filed pursuant to 28 U.S.C. §1659, until the determination of the Commission, in Investigation Nos. 608 and 612, becomes final and all appeals are exhausted.

Dated: _____, 2008          BY ORDER OF THE COMMISSION

_____
Marilyn R. Abbott
Secretary

- 4 -

CONSENTED TO:

_Sarah Nell Walsh_

Joseph D. Wargo
Michael S. French
Shanon J. McGinnis
Sarah-Nell H. Walsh
WARGO & FRENCH LLP
1170 Peachtree Street NE
Suite 2020
Atlanta, GA 30309
Telephone: (404) 853-1500
Facsimile: (404) 853-1501

*Counsel Darby Group Companies, Inc. and
Darby Dental Dental Supply, LLC*

_Jeffrey M. Telep_ /By: SW With express permission

Gilbert B. Kaplan
Jeffrey M. Telep (with express permission)
Matthew S. Dunne
Taryn L. Koball
KING & SPALDING, LLP
1700 Pennsylvania Avenue, NW, Suite 200
Washington, D.C. 20006-4706
(202) 737-0500

Anthony B. Askew
Katrina L. Quicker
Thomas C. Lundin, Jr.
Jason M. Pass
KING & SPALDING
1180 Peachtree Street
Atlanta, Georgia 30309

Gregory C. Dorris
Charles H. Carpenter
PEPPER HAMILTON LLP
Hamilton Square
600 Fourteenth Street, N.W.
Washington, D.C. 20005-2004
(202) 220-1200

William D. Belanger
Aaron J. Levangie
PEPPER HAMILTON LLP
Suite 1010
101 Federal Street
Boston, MA 02110-1817

*Counsel for Tillotson Corporation.*

- 5 -

# EXHIBIT A

# Exhibit A

AmerCare Inc.

Ammex Corporation

Ascend Eagle Incorporated

Best Glove Inc.

Delta Hospital Supply Inc.

Delta Medical Systems Inc.

Delta Medical Supply Group, Inc.

Dynarex Corporation

Global Glove and Safety Manufacturing Inc.

Gloveco Inc.

Haiku Holdings Ltd.

High Five Products Inc.

Iron Bridge Tools Inc.

KNK Medical-Dental Specialties, Ltd.

Magla Products LLC

Malaytex USA, Inc.

Maxter Glove Manufacturing Sdn. Bhd.

Medline Industries Inc.

Microflex Corporation

Omni International LLC

Safeskin Corporation

Safeskin Scientific Corporation

SAS Safety Corporation

Sempermed USA Inc.

Shein Wei USA Inc.

Shijiazhuang Hongray Plastic Products Ltd.

The Safety Zone LLC

Supermax Corporation Bhd.

Supermax Latex Products Sdn. Bhd.

Supermax Glove Manufacturing Sdn. Bhd.

Seal Polymer Industries Bhd.

Tradex International Inc.

Tronex International, Inc.

West Chester Holdings Inc.

Young PS Acquisitions LLC d/b/a Plak Smacker

Zhangjiagang Dayu Rubber Products Co. Ltd.

Zhenjiang Kangda Emulsion Co. Ltd.

Zhenjiang Suhui Latex Products Co. Ltd.

## CERTIFICATE OF SERVICE

I, DAVID M. MORRIS, do hereby certify that on this date, I caused copies of the foregoing Declaration Of Thomas B. Kenworthy to be served upon the following individuals by Electronic and First Class Mail:

Brian Meiners, Esquire
KING & SPALDING LLP
1700 Pennsylvania Avenue, N.W.
Suite 200
Washington, DC  20006-2706

Russell Wofford, Jr., Esquire
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309

*Counsel for Counterclaim Defendant*
*Tillotson Corporation*

DATED:    August 12, 2008                    _____ _____/s/_____
                                                          DAVID M. MORRIS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ANSELL HEALTHCARE PRODUCTS LLC, and ANSELL PROTECTIVE PRODUCTS INC.,**

               **Counterclaimants,**

    **v.**

**TILLOTSON CORPORATION,**

               **Counterclaim Defendant.**

**C.A. 1:08-CV-585-RMC**

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2008, upon consideration of Tillotson's Motion To Stay Proceedings and Counterclaimants' opposition thereto, and Tillotson having failed to make out a clear case of inequity or hardship in being required to go forward, the motion is DENIED.

BY THE COURT:

_____
          United States District Judge